IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>PRESTON POPE and<br>JERON MORRIS,<br><br>        Defendants. | 8:16CR59<br><br>FINDINGS AND<br>RECOMMENDATION<br><br>and<br><br>ORDER |

    This matter is before the court on defendant Preston Pope's (Pope) motion to suppress, motion for separate trials, and a motion in limine (Filing No. 42). Pope did not file a brief in support of the motion but included argument within his motion. Defendant Jeron Morris (Morris) also filed, pro se, a motion in limine (Filing No. 45), a motion to suppress (Filing No. 46), and a motion to sever (Filing No. 47). The government filed briefs in opposition to Pope's pretrial motions (Filing No. 48) and Morris' motions to suppress and sever (Filing No. 49).

    The court held a hearing on Pope's motion to suppress and motion for separate trials and Morris' motion to suppress and sever on June 17, 2016. The government was represented by Assistant U.S. Attorney Susan T. Lehr. Pope was represented by Travis Penn. Morris appeared pro se with his standby counsel, Assistant Federal Public Defender Karen M. Shanahan (AFPD Shanahan). At the commencement of the hearing, Morris withdrew his request to proceed pro se and accepted the representation of AFPD Shanahan (TR. 2-3). AFPD Shanahan adopted Morris' pro se motions (TR. 3). Morris' motion in limine (Filing No. 45) and Pope's motion in limine (Filing No. 42) were denied without prejudice to reassertion at a time closer to trial.

    During the hearing, the court heard the testimony of Omaha Police Department (OPD) Officers Douglas Herout (Officer Herout), William Hardisty (Officer Hardisty), Nicholas Meade (Officer Meade), Jaime Desautels (Officer Desautels), and Anthony Barnes (Officer Barnes) for the government. The court also heard the testimony of Ladana Guyton, LaKenna Guyton, and Tarell Snyder for the defendants. The court received into evidence an Affidavit in Support of an Order for Identifying Physical Characteristics, an


Order, and an Inventory (Exhibit 1), and an Affidavit and Application for Issuance of a Search Warrant, a Search Warrant, and a Receipt and Inventory (Exhibit 2).

After the testimony of Officer Hardisty, the court heard argument from all counsel on the motions to sever by Pope and Morris and took the motions to sever under advisement. Morris' motion to suppress which concerned an issue unrelated to Pope's motion to suppress was scheduled for a later date at APFD Shanahan's request. Morris and APFD Shanahan remained in the courtroom as observers for the remainder of the hearing. The government and Pope were given leave to file post-hearing briefs. The government filed a post-hearing brief on June 17, 2016 (Filing No. 51). Pope filed a post-hearing brief on June 27, 2016. A transcript (TR.) of the hearing was filed on June 27, 2016 (Filing No. 61).

## MOTIONS TO SEVER AND FOR SEPARATE TRIALS

Pope and Morris are charged in Count I of the Indictment with a violation of 18 U.S.C. §§ 1951 and 2, i.e., the robbery of a Walgreens store by threatened force and display of a handgun in Omaha, Nebraska, on August 11, 2015. The Indictment charges the language of the Hobbs Act dealing with robbery affecting interstate commerce. Both Pope and Morris are charged in Count II of the Indictment with a violation of 18 U.S.C. §§ 924(c) and 2, i.e., brandishing a firearm during a crime of violence which may be prosecuted in a court of the United States for the crime charged in Count I of the Indictment. Pope and Morris are charged in Count III of the Indictment with the August 11, 2015, robbery of the U.S. Bank in Omaha, Nebraska, by force, violence and intimidation. Pope and Morris are charged in Count IV of the Indictment with a violation of 18 U.S.C. §§ 924(c) and 2, i.e., brandishing a firearm during a crime of violence for the bank robbery charged in Count II of the Indictment. Pope is charged in Count V with the August 14, 2015, possession of a handgun in Omaha, Nebraska, after having been convicted of a felony, i.e., third degree assault of an officer, in violation of 18 U.S.C. §922(g). Morris is charged in Count VI with the September 27, 2015, possession of a handgun in Omaha, Nebraska, after having been convicted of a felony, i.e., domestic assault causing bodily injury, in violation of 18 U.S.C. § 922(g).

Pope moves for separate trials on Counts I and II collectively and separately from Morris, Counts III and IV collectively and separately from Morris, and Count V solely (Filing No. 42).  Morris moves for separate trials on all counts (Filing No. 47).

Fed. R. Crim. P. 8 provides:

> **(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Further, Fed. R. Crim. P. 14(a) provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

On August 11, 2015, around 12:45 p.m., two black male suspects arrived at Walgreens, located at 3001 Dodge Street, Omaha, Nebraska, in a white Buick (TR. 13-14). One of the suspects pointed a firearm at a customer and took his wallet (TR. 13). The other suspect jumped the counter where the store clerk was located and emptied the cash register (TR. 13).  Thereafter, the two suspects fled the store (TR.13).  Later in the afternoon of August 11, 2015, two black male suspects robbed a U.S. Bank at gunpoint inside the No Frills grocery store at 4240 South 50th Street, Omaha, Nebraska (TR.14). One of the suspects jumped the counter and ordered a bank teller to place money into a bag, while the other suspect pointed a gun at the teller and customers in the banking area (TR. 14).  Following the robbery, the suspects drove away in a white Buick LeSabre (TR. 14, 18).  The white Buick LeSabre was later found near 60th and Frederick streets in Omaha, Nebraska, where witnesses stated they observed two black males get out of the Buick LeSabre and enter a green sport utility vehicle (SUV) or minivan (TR. 15, 18).  Both

robberies were performed with similar *modus operandi* and on the same day. The defendants are both charged in Counts I - IV, with both robberies and brandishing firearms during the robberies.

Counts I through IV are properly joined under Fed. R. Crim. P. 8(a). The charges are of the same or similar character, are based on the same transaction, and constitute a common scheme or plan. **See *United States v. Scott***, 732 F.3d 910, 916 (8th Cir. 2013); ***United States v. Tyndall***, 263 F.3d 848, 849 (8th Cir. 2001); ***United States v. McQuiston***, 998 F.2d 627, 629 (8th Cir. 1993); ***United States v. Rogers***, 732 F.2d 625, 629 (8th Cir. 1984).

Likewise, the defendants as charged in Counts I through IV are properly joined under Fed. R. Crim. P. 8(b). There is a preference in the federal system for joint trials of defendants who are indicted together as joint trials play a vital role in the criminal justice system. ***Zafiro v. United States***, 506 U.S. 534, 537 (1993). They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." ***Richardson v. Marsh***, 481 U.S. 200, 209-10 (1987). The Eighth Circuit has held that "[r]arely, if ever, will it be improper for co-conspirators to be tried together." ***United States v. Jackson***, 64 F.3d 1213, 1217 (8th Cir. 1995); **see *United States v. Warfield***, 97 F.3d 1014, 1018 (8th Cir. 1996). In this case, the defendants are not merely co-conspirators but co-actors.

"When defendants are properly joined, there is a strong presumption for their joint trial, as it gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." ***United States v. Lewis***, 557 F.3d 601, 609 (8th Cir. 2009) (**quoting *United States v. Flores***, 362 F.3d 1030, 1039 (8th Cir. 2004) (internal quotation marks omitted)); ***United States v. Rimell***, 21 F.3d 281, 288 (8th Cir. 1994) ("The prerequisites for joinder are liberally construed in favor of joinder."). "This presumption can only be overcome if the prejudice is 'severe or compelling.'" *Lewis*, 557 F.3d at 609 (**quoting *United States v. Crumley***, 528 F.3d 1053, 1063 (8th Cir. 2008)).

> "To demonstrate the severe or compelling prejudice necessary to show that the court abused its discretion in denying severance, a defendant must show that his defense was irreconcilable with that of the codefendant or that the jury was unable to compartmentalize the evidence." [*Lewis*, 557 F.3d

4

> at 609] (**quoting** *United States v. Basile*, 109 F.3d 1304, 1310 (8th Cir. 1997) (internal quotation marks omitted)). "The defendant carries a heavy burden in making this showing." [*United States v. Payton*, 636 F.3d 1027, 1037 (8th Cir. 2011)] (**quoting** [*United States v. Sandstrom*, 594 F.3d 634, 645 (8th Cir. 2010)] (internal quotation marks omitted)).
>
> . . .
>
> "In assessing the jury's ability to compartmentalize the evidence against joint defendants, we consider the complexity of the case, whether any of the defendants was acquitted, and the adequacy of the jury instructions and admonitions to the jury." *Lewis*, 557 F.3d at 610 (**quoting** *United States v. Ghant*, 339 F.3d 660, 666 (8th Cir. 2003) ((internal quotation marks omitted)).

*United States v. Casteel*, 663 F.3d 1013, 1018 (8th Cir. 2011).

Further, neither Pope nor Morris presented any evidence of prejudice under Fed. R. Crim. P. 14(a) to justify severance defendants or counts in Counts I through IV of the Indictment.

Counts V and VI present another problem. Count V charges Pope with being a felon in possession of a handgun on August 14, 2015, after having been convicted of a felony assault of an officer. Count VI charges Morris with possession of a handgun on September 27, 2015, after having been convicted of a felony domestic assault. While there may be evidence at trial to tie the handguns charged in Counts V and VI to the handguns used in the robberies charged in Counts I through IV, there was no evidence presented at the hearing that the handguns were the handguns used in the robberies charged. The government argues these counts are properly joined and the evidence regarding the felon in possession charges would be admissible under Fed. R. Evid. 404(b). The Eighth Circuit has regularly upheld the joinder of felon in possession charges absent a clear showing of prejudice. **See** *United States v. Garrett*, 648 F.3d 618, 625 (8th Cir. 2011); *United States v. Rock*, 282 F.3d 548, 552 (8th Cir. 2002). "Where evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together." *United States v. Rogers*, 732 F.2d 625, 630 (8th Cir. 1984).

The government did not present any evidence the firearms possessed in Counts V and VI were the same firearms used in the two robberies in Counts I and III. Pope is charged with possessing a firearm in Count V on August 14, 2015, a few days after the robberies. Morris is charged with possessing a firearm on September 27, 2015, a month and a half after the robberies. If Pope were to go to trial alone, there would be no undue prejudice in trying him on Counts I, II, III, IV, and V together. If Morris were to be tried alone, he would be unduly prejudiced by the joinder of Count VI with Counts I through IV. If Morris was to be tried with Pope, Morris would suffer undue prejudice by the joinder of Counts V and VI. **See *United States v. Holloway***, 1 F.3d 307, 310 (5th Cir. 1993).

The court finds if Pope and Morris proceed to trial Pope and Morris should be tried together on Counts I through IV with Pope being tried separately on Count V and Morris tried separately on Count VI. Should Pope proceed to trial alone, Counts I through V should remain joined for trial. If Morris should proceed to trial alone, Counts I through IV should be tried separately from Count VI.

## POPE'S MOTION TO SUPPRESS

Pope seeks to suppress evidence as a result of OPD's taking of Pope's DNA and the result of an initiation of an OPD traffic stop of Pope on August 14, 2015, and the subsequent recovery of a firearm on the same day.

### A. BACKGROUND

On August 11, 2015, at around 12:45 a.m., two black males arrived in a white Buick and robbed a Walgreens located at 3001 Dodge Street in Omaha by gunpoint (TR. 13-14). One of the men pointed a firearm at a customer and took his wallet (TR. 13). The other man jumped to where the store clerk was located behind the counter and started to empty the register (TR. 13). The suspects fled the store (TR. 14).

Later on August 11, 2015, at around 5:45 p.m., two males robbed a U.S. Bank located inside the No Frills grocery store at 4240 South 50th Street in Omaha (TR 14). One of the suspects jumped the counter and ordered a bank teller to place money into a bag, while the other suspect pointed a gun at the tellers and customers at the bank (TR. 14). Following the robbery, the two suspects drove away in a white Buick LeSabre (TR.

6

14, 18). The white Buick LeSabre was later found near 60th Street and Frederick, where witnesses stated they observed two black males get out of the white Buick and enter a green SUV or minivan (TR. 15, 18). When law enforcement searched the white Buick, they found a magazine containing forty caliber live rounds of ammunition (TR. 15-16).

On August 14, 2015, at about 2:30 a.m., OPD Officer Meade observed a green minivan with the passenger side brake light out traveling north on 24th Street near Fort Street in Omaha (TR. 56). Officer Meade was traveling in an OPD cruiser with Officer Barnes (TR. 56). Officer Meade first noticed the tail light, and Officer Barnes looked up and could see the left brake light and the high mount brake light on the vehicle lit up very bright while the brake light on the right-hand side of the vehicle didn't appear to illuminate at all (TR. 76). Officer Meade continued to follow the vehicle northbound in an attempt to obtain the vehicle's license plate number before initiating a traffic stop (TR. 56-57). North of 24th and Kansas streets, the vehicle signaled to make a left-hand turn into Miller Park, a public park (TR. 57). The park is marked with a sign showing it is closed from 11 p.m. until 5 a.m. (TR. 57). OPD officers initiated a traffic stop and activated the police car's emergency lights as the green minivan entered the park, but the vehicle continued westbound on Miller Park Drive directly through the center of the park (TR. 57-58). The green minivan slowed, but continued through Miller Park for six blocks, and failed to stop (TR 58). The officers broadcast the vehicle's information, including observations about the occupants, and declared they were not going to pursue the vehicle in accordance with OPD policy (TR. 59). The officers shut off the cruiser's emergency lights and stopped the cruiser (TR. 59).

OPD Officer Desautels heard the broadcast and observed a male running southbound in the back yards on the west side of 36th Street towards Crown Point Avenue and hopping four or five fences (TR. 68). Officer Desautels lost sight of the male, but saw the green minivan that fled from Officers Meade and Barnes' traffic pursuit (TR. 68). Officer Desautels drove to the location of the green minivan, stopped and radioed for a perimeter to be established (TR. 68). Officer Desautels walked south to where he previously saw the male running and saw a male matching the description standing in a driveway at the sidewalk (TR. 68). Officer Desautels approached the male and initiated a conversation with him (TR. 68). The male was identified as Pope (TR. 69). He was of a similar height and was wearing a yellow shirt similar to the one worn by the male Officer Desautels saw

running (TR. 69). Pope's left hand was bleeding (TR. 69). Officer Desautels believed Pope to be the man running away from the green minivan and placed Pope in custody for fleeing a traffic stop (TR. 70). Officer Desautels then walked the route Pope had taken and found car keys and a cell phone in one of the yards (TR. 70-71).

Officer Barnes arrived at the scene and took custody of Pope, transporting him Pope to the Douglas County Correction Center (TR. 74). After Pope was booked, Officer Barnes went back to Miller Park to retrace the path of the minvan took when it fled the traffic stop (TR. 74). Using all the cruiser's lights and spotlights, Officer Barnes traveled through Miller Park to 30th Street and onto Belvedere until 31st Avenue (TR. 75). On the right-hand side of the road underneath a hanging branch of a tree, Officer Barnes saw a handgun laying next to the sidewalk (TR. 75). Officer Barnes then called the OPD crime lab to come to the scene (TR. 76).

Pope contests the defectiveness of the brake light. He called as witnesses Ladana Guyton, Pope's mother, who was the registered owner of the minivan (TR. 81). Ladana Guyton recovered the minivan from OPD custody and was told the taillight was out (TR. 82). Ladana Guyton had the officers test the taillight before she drove it away and the taillights worked (TR. 83). Ladana Guyton testified the taillights on the minivan had been defective before when the motherboard went out, but she had them repaired a week or so before August 14, 2015 (TR. 82-85). LaKenna Guyton, Pope's sister, testified she drove her mother to OPD to pick up the minivan (TR. 87). LaKenna Guyton testified she was present when the OPD checked the taillights of the minivan before her mother drove off, and the taillights worked (TR. 87). When her mother drove the minivan away from the OPD lot, she followed in her mother's car and noted the taillights were working (TR. 88). Tarell Snyder testified he is a mechanic at Meineke and a friend of Ladana Guyton (TR. 93). Snyder testified he worked on the minivan at Pope's house, replacing the motherboard involving the taillights about three weeks before Pope's arrest (TR. 93-94). Following that repair, Snyder testified, the taillights were in good working order (TR. 95).

On August 14, 2015, Officer Hardisty prepared a search warrant to obtain a buccal swab from Pope to collect DNA for comparison to DNA evidence in the investigation and presented the affidavit to a Douglas County judge who issued a search warrant (TR. 7-8; Exhibit 1). A buccal swab was obtained, tested, and resulted in Pope not being excluded

as a major factor in the DNA of evidence in the investigation (TR. 10).

**B.   ANALYSIS**

There were two reasons the OPD officers pursued the green minivan on August 14, 2015.  First, the officers believed the minivan had a defective taillight (which is disputed by defense witnesses) and the minivan had entered a public park during closed hours (which is not disputed).  Either one or both would have been a sufficient basis to begin pursuit in an attempt to stop the minivan.  "[A] traffic stop is reasonable if it is supported by either probable cause or an articulable reasonable suspicion that a traffic violation has occurred." ***United States v. Chartier***, 772 F. 3d 539, 543 (8th Cir. 2014) (**quoting *United States v. Washington***, 455 F.3d 824, 826 (8th Cir. 2006)).  "[A]*ny* traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." ***United States v. Coleman***, 603 F.3d 496,499 (8th Cir. 2010) (**quoting *United States v. Jones***, 275 F.3d 673, 680 (8th Cir. 2001) (emphasis in original)).  "[O]nce an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." ***United States v. Gunnell***, 775 F.3d 1079, 1083 (8th Cir. 2015), **cert denied**, 136 S.Ct. 851 (2016) (**quoting *United States v. Frasher***, 622 F.3d 450, 453 (8th Cir. 2011)).

Moreover, the act of fleeing from an initial stop constitutes grounds for a suspect's arrest, even if attenuated from an earlier stop.  ***United States v. Cox***, 2014 WL 2719645, at *4 (D. Minn. June 16, 2014).  Nebraska law also provides "[a]ny person who operates any motor vehicle to flee in such vehicle in an effort to avoid arrest or citation commits the offense of operation of a motor vehicle to avoid arrest."  Neb. Rev. Stat. § 28-905(1).  Additionally, Nebraska law states "[a] person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders . . . the enforcement of the penal law . . . by a peace officer . . . acting under color of his or her official authority."  Neb. Rev. Stat. § 28–906(1).  "The mere act of running away from law enforcement officers constitutes physical interference or obstacle within the meaning of this provision." ***United States v. Sledge***, 460 F.3d 963, 967 (8th Cir. 2006).  Therefore, even if the initial stop by

law enforcement is determined to be unlawful, fleeing from law enforcement supplies sufficient probable cause for an arrest. *Id.* at 966-67. Pope was seen running through yards and hopping fences in the vicinity of the abandoned minivan by Officer Desautels. Pope's detention by Officer Desautels was appropriate and lawful.

Pope has not claimed or denied ownership of the firearm found following the traffic stop. Although law enforcement believes the firearm was dropped by Pope because it was on the path of the flight, it was abandoned on a public sidewalk and the officers were within their rights and responsibilities to seize the firearm. However, even if the firearm did belong to Pope, the property was abandoned and any expectation of privacy in the item was forfeited upon its abandonment. In *United States v. Nowak*, 2016 WL 3361475 (8th Cir. June 17, 2016), involving an abandoned backpack following the subject's flight from a traffic stop, the Eighth Circuit held:

> The Fourth Amendment is not implicated by a search of property that has been abandoned because a defendant who has abandoned his property "'has relinquished h[is] reasonable expectation of privacy.'" *United States v. James*, 534 F.3d 868, 873 (8th Cir. 2008) (alteration in original) (**quoting** *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997)).

If Pope claims any ownership of the firearm he can claim no constitutional violation in its seizure as he had abandoned and relinquished any expectation of privacy in it.

Pope asserts any of the evidence was a result of the "poisonous tree," i.e., the illegal traffic pursuit, and should be excluded under the exclusionary rule of *Wong Sun v. United States*, 371 U.S. 471 (1963). "Under the 'fruit of the poisonous tree' doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality." *Hamilton v. Nix*, 809 F.2d 463, 465 (8th Cir. 1987) (**citing** *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963)).

The court has found the officer's pursuit of the minivan to be lawful, but even assuming, *arguendo*, that the traffic pursuit was unlawful, the seizure of the firearm was attenuated several times over. First by the pursuing officers ceasing their pursuit, and second, by the abandonment of the firearm. When determining if sufficient attenuation exists, the focus is on three specific factors: (1) the time elapsed between the illegality and

acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of any official misconduct. ***Brown v. Illinois***, 422 U.S. 590, 603-04 (1975).

The mere fact that police recovered the firearm after an alleged unlawful pursuit does not render this evidence inadmissible. Had authorities not detained Pope, they would have been free to retrace the minivan's route and recover any and all evidence they encountered on the way. Evidence recovered under these circumstances is ordinarily admissible. **See *United States v. Liu***, 180 F.3d 957, 962 (8th Cir. 1999). Given the ***Brown*** factors set forth above, the recovery of the firearm would be sufficiently attenuated from any alleged illegality. The motion to suppress the firearm from evidence should be denied.

During the hearing, after a discussion of the search warrant (Exhibit 1) for the buccal swab of Pope at OPD Headquarters, Pope withdrew his motion to suppress as it relates to the buccal swab (TR. 102).

**IT ORDERED**:

The defendants' motions to sever (Filing Nos. 42 and 47) are granted, in part, and denied, in part as follows:

> Should Pope and Morris proceed to trial Pope and Morris shall be tried together on Counts I through IV with Pope being tried separately on Count V and Morris tried separately on Count VI. Should Pope proceed to trial alone, Counts I through V should shall remain joined for trial. Should Morris proceed to trial alone, Counts I through IV shall be tried separately from Count VI.

**IT IS RECOMMENDED TO CHIEF JUDGE SMITH CAMP that**:

Pope's Motion to Suppress (Filing No. 42) be denied.

Dated this 1st day of September, 2016.

<div style="text-align: right;">
BY THE COURT:<br>
 s/ Thomas D. Thalken<br>
United States Magistrate Judge
</div>